Willie **BROOKINS**, Plaintiff,

v.

**CHRYSLER CORPORATION, DODGE MAIN DIVISION** (a corporation), et al., Defendants.

Civ. A. No. 4–70388.

United States District Court, E. D. Michigan, S. D.

Aug. 1, 1974.

Wilfred C. Rice, Detroit, Mich., for plaintiff.

Keith A. Jenkins, Clifford L. Johnson, Detroit, Mich., for Chrysler Corp.

John A. Fillion, Gen. Counsel, Edwin G. Fabre, Asst. Gen. Counsel Detroit, Mich., for defendant Unions.

## MEMORANDUM OPINION

FEIKENS, District Judge.

Plaintiff sues Chrysler Corporation (Chrysler) for breach of contract, alleging that he was improperly discharged from employment, and the International Union, UAW, and its Dodge Local No. 3 (hereinafter referred to jointly as the union), alleging a breach of the union's duty of fair representation. Following removal of this case from the Wayne County Circuit Court, defendants moved for summary judgment.

### Facts and Allegations

On September 7, 1967 (affidavit of Thomas Miner, based on Chrysler records) or September 11, 1967 (complaint ¶ 6), plaintiff was discharged from employment by Chrysler following an altercation with plant guards at the Hamtramck Assembly Plant. On September 17, 1967, the union filed a grievance protesting plaintiff's discharge. On January 21, 1969, plaintiff's attorney, Wilfred C. Rice, wrote Chrysler claiming that he and his client had made "numerous requests" through the union and the company for an investigation and hearing on plaintiff's discharge, but that his request for a hearing and arbitration of his grievance had in each instance been refused. The letter threatened a lawsuit if proceedings were not instituted immediately. Chrysler's reply informed Rice of the pending grievance and requested that he substantiate his charges by detailing when and by whom plaintiff and his attorney had been "stalled off" and who had refused a hearing on his grievance. There was apparently no further correspondence.

On January 26, 1970, the grievance, which had advanced to the last step before arbitration, was withdrawn by the union. There is no indication that plaintiff was ever formally notified of the termination and no clear evidence as

to when he learned that his grievance had been withdrawn. An unsworn allegation in his brief indicates that it was only "recently", though no exact date is given. In his answers to interrogatories, dated January 21, 1974, plaintiff states on one occasion that he "is unaware that his grievance was withdrawn", and on two others that he "was unaware" of the withdrawal. Again, no dates are given. On August 27, 1973, plaintiff filed suit in Wayne County Circuit Court against both the union and Chrysler, alleging breach of contract, fraud, and breach of the duty of fair representation.

### The Union's Motion

The union seeks summary judgment based on: (1) the running of the statute of limitations, (2) failure to plead facts sufficient to amount to a cause of action for breach of the duty of fair representation, and (3) failure to exhaust mandatory intra-union remedies. Only the last of these need be considered.

The union has submitted the affidavits of William Beckham and David Klein in support of its contention that plaintiff has never instituted an internal appeal of the union's decision to withdraw his grievance. Plaintiff has been highly evasive on this point. When asked to admit that he had not followed the various appeal procedures available to him, he denied that he had not, adding that "[i]n any event, any attempts to do more than was done would have been a useless act of the plaintiff", or that "[h]e at least attempted to do so". The answers to a subsequent set of interrogatories are even more confusing. When asked for details of his appeal to the local membership, he indicated that he did not know the exact dates and that only a handwritten request was made at the union office, of which no copies were kept. Several names were mentioned. Yet in this and subsequent answers plaintiff claimed that he was "unaware that his grievance had been withdrawn; he was always informed that

steps were being taken to get his job back, seniority and back pay" (Answers to Interrogatories, no. 3). Other answers mention: the letter of January 21, 1969, in which plaintiff's attorney threatens Chrysler with suit if plaintiff's grievance is not processed; a trip to Solidarity House in the fall of 1968 (shortly after criminal charges filed against plaintiff growing out of the same altercation for which he was fired were either dismissed [Answers to Interrogatories, no. 5] or were the subject of a jury verdict of acquittal [plaintiff's brief at 2–3]); and a general failure of memory and lack of records by the plaintiff. Plaintiff's brief does not seriously pursue or rely on a factual claim of compliance with the appeal procedures, but rather argues that compliance was unnecessary in this case.

From the above evidence it seems clear that plaintiff has unwittingly or deliberately confused his earlier efforts to prod the union into acting on his then-pending grievance (although he seems for a long time to have been unaware of its existence) with the procedures by which he was required to pursue an appeal of the union's later decision to withdraw the grievance. At no point does plaintiff allege that he took any action following the withdrawal of his grievance. It may therefore be taken as established for purposes of this motion as an undisputed fact that plaintiff did not pursue his intra-union remedies.

"Where, as here, there is no question as to the adequacy and mandatory nature of the intraunion remedies it is well settled that an exhaustion of the remedies is an indispensible prerequisite to the institution of a civil action against a union." Newgent v. Modine Mfg. Co., 495 F.2d 919 (7th Cir. 1974).

This rule is regularly applied in the Sixth Circuit, and is recognized in most others as well. *See* See v. Local 417, UAW, 480 F.2d 926 (6th Cir. 1973), aff'g 69 LC ¶ 13,165 (E.D.Mich.1972); Bsharah v. Eltra Corp., 394 F.2d 502 (6th Cir. 1968); Stringfield v. International Union, United Rubber Workers, 285 F.2d 764 (6th Cir. 1960), aff'g 190 F.Supp. 380 (E.D.Mich.1959); Whitmore v. Greyhound Lines, Inc., 71 LC ¶ 13,821 (E.D.Mich.1973); Cecil v. UAW, 71 LC ¶ 13,754 (W.D.Ky.1973); Dill v. Wood Shovel & Tool Co., 68 LC ¶ 12,685 (S.D.Ohio 1972); Imbrunnone v. Chrysler Corp., 336 F.Supp. 1223 (E.D.Mich.1971); Anderson v. Ford Motor Co., 319 F.Supp. 134 (E.D.Mich.1970); Harrington v. Chrysler Corp., 303 F.Supp. 495 (E.D.Mich.1969). *See also* Imel v. Zohn Mfg. Co., 481 F.2d 181 (10th Cir. 1973); Orphan v. Furnco Constr. Corp., 466 F.2d 795 (7th Cir. 1972); Foy v. Norfolk & W. Ry., 377 F.2d 243 (4th Cir.), cert. denied, 389 U.S. 848, 88 S.Ct. 74, 19 L.Ed.2d 117 (1967); Neal v. System Board of Adjustment, 348 F.2d 722 (8th Cir. 1965); Fingar v. Seaboard Air Line R. R., 277 F.2d 698 (5th Cir. 1960); Gainey v. Brotherhood of Ry. & S. S. Clerks, 275 F.2d 342 (3d Cir. 1959), cert. denied, 363 U.S. 811, 80 S.Ct. 1248, 4 L.Ed.2d 1153 (1960); Jenkins v. General Motors Corp., 364 F.Supp. 302 (D.Del.1973); Davis v. Local 242, Hod-Carriers & Gen. Laborers Union, 72 LC ¶ 14,033 (W.D. Wash.1973).

Because plaintiff here never initiated an appeal, it is unnecessary to consider how far an appeal must be carried to satisfy the requirements of exhaustion. *Compare* Ruzicka v. General Motors Corp., 336 F.Supp. 824, 826–827 (E.D. Mich.1968), *with* Anderson v. Ford Motors Co., *supra,* 319 F.Supp. at 137–138. And because there is no serious question as to the adequacy of the UAW's internal remedies, the only way in which plaintiff can escape the exhaustion requirement is by demonstrating the futility of pursuing them in his case. *See, e. g.,* Glover v. St. Louis-S. F. Ry., 393 U.S. 324, 330, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969); Buzzard v. Local 1040, IAMAW, 480 F.2d 35, 41–42 (9th Cir. 1973).

▮ Of course, the grounds for claiming futility should be clearly set forth in the pleadings.

"[I]t is incumbent upon the plaintiff as a condition to his seeking relief in this court to plead affirmatively that he has either exhausted his remedies as set forth upon the contract upon which he relies or to plead facts in avoidance of that obligation showing that such procedures would be futile." Sedlarik v. General Motors Corp., 54 F.R.D. 230, 233 (W.D.Mich.1971).

Plaintiff has claimed futility in only the most general and conclusory terms in his discovery and motion papers; there is nothing in the complaint. If the defect were merely one of pleading, the normal remedy would be to permit the plaintiff to amend his complaint. *See, e. g.,* Sedlarik v. General Motors Corp., *supra,* 54 F.R.D. at 233. But where it is plain that there is no factual basis for the claim of futility, it would be useless to permit amendment of the complaint and summary judgment is proper.

Here the only argument in support of the claim of futility which plaintiff has presented is the contention in his brief that when he was informed by union officials his grievance had been withdrawn, he was also told that there was nothing more he could do about it and was never informed of his right to appeal the union's action in terminating the grievance. Rule 56(e) of the Federal Rules of Civil Procedure provides that:

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

The Rule also provides that:

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

■ The above contentions, made only in an unverified brief, are not competent to oppose the union's properly supported claim of failure to exhaust. Furthermore, even if this contention were competently presented, it would not create a genuine issue as to a material fact. There may be circumstances in which failure to inform a union member of his rights or misinformation as to their availability would excuse his failure to resort to internal remedies. *See* Retana v. Apartment, Motel, Hotel & Elevator Operators, Local 14, 453 F.2d 1018, 1027–1028 (9th Cir. 1972); Sciaraffa v. Oxford Paper Co., 310 F.Supp. 891, 902 (D.Me.1970). However, there must be some showing that this conduct was part of a discriminatory pattern or practice or was otherwise indicative of the futility of an appeal. Futility is what the non-exhausting member must ultimately prove, and it is only as evidence of futility that the acts charged are significant. Here, even if the plaintiff's allegations concerning what he was told were established, they do not impugn the fairness of at least the higher levels of the union's appeal procedures, nor do they excuse plaintiff's failure to exercise reasonable diligence in discovering the remedies available to him. This is especially true here, where the aggrieved union member was represented by counsel throughout the entire period following withdrawal of his grievance.

■ The Seventh Circuit's disposition of the same issue on strikingly similar facts in Newgent v. Modine Mfg. Co., *supra,* states the general rule, which is controlling in this case.

"Newgent contends that there are material issues of fact with respect to whether the Union is estopped from asserting the defense of failure to exhaust intra-union remedies. This contention is based upon allegations in his deposition and affidavit that (1) he was 'not aware of the details re-

garding intra-union appeals or appeals from union decisions regarding grievances'; and (2) Hluchan advised him that a further processing of his grievance 'would require the posting of a bond in the amount of $50,000.00', that 'the taking of any further intra-union steps would be senseless and fruitless', and that he should 'obtain a private attorney and should file suit against both Modine . . . and the union'.

"As noted *supra*, the exhaustion of union remedies is mandatory under the Union's Constitution and there is no question that the Union remedies are in fact fair and adequate and were freely available to Newgent. By becoming a member of the Union Newgent was contractually obligated to exhaust union remedies before resorting to a court action. . . . Necessarily implied in this obligation is the duty to become aware of the nature and availability of union remedies. Newgent was not 'justified in remaining in ignorance of the provisions governing his own union or, in fact, of relying on a statement by an officer that there was nothing he could do'. Donahue v. Acme Markets, Inc., 54 LC ¶ 11,413 (E.D.Pa.1966). We hold that Newgent's allegations of ignorance and reliance upon Hluchan's directives to institute court action are not sufficient to avoid the defense of failure to exhaust union remedies . . . ." 495 F.2d at 927 (footnotes omitted).

*See also* Jenkins v. General Motors Corp., *supra*, 364 F.Supp. at 309. Plaintiff therefore has no adequate answer to the union's defense of failure to exhaust internal remedies, and for that reason summary judgment must be granted, dismissing defendant union from the cause.

### Chrysler's Motion

■■ As a general rule, "individual employees wishing to assert contract grievances must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress". Republic Steel Corp. v. Maddox, 379 U.S. 650, 652, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965) (emphasis, footnote omitted). However, "the employee may seek judicial enforcement of his contractual rights . . . if, as is true here, the union has sole power under the contract to invoke the higher stages of the grievance procedure, and if, as is alleged here, the employee-plaintiff has been prevented from exhausting his contractual remedies by the union's wrongful refusal to process the grievance". Vaca v. Sipes, 386 U.S. 171, 185, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967) (emphasis omitted). Thus,

> "the wrongfully discharged employee may bring an action against his employer in the face of a defense based upon the failure to exhaust contractual remedies, provided the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance." *Id.* at 186, 87 S.Ct. at 914.

The crucial question then in determining whether Chrysler may be sued despite plaintiff's failure to exhaust contractual grievance procedures is whether the union's dismissal from the case (and the reasons therefor) leaves the plaintiff in a position to "prove that the union . . . breached its duty of fair representation".

The answer seems to turn on whether the union's successful exhaustion defense goes to the merits of the claimed unfair representation or merely to the ripeness of the controversy or plaintiff's capacity to sue. If the former—*i. e.*, if a failure to exhaust internal remedies means that the duty of fair representation has not yet been breached—then plaintiff clearly cannot prove the contrary and the employer may properly rely on the employee's failure to exhaust contractual remedies, for he has through the judgment of dismissal as to the union lost his only legally valid excuse for failing to exhaust. In that sense the employer does indeed get a "free ride"

on the union's defense. However, if the union's dismissal for failure to exhaust internal remedies recognizes that a breach of the duty of fair representation may have occurred, and holds only that a judicial remedy for that breach is not presently available, then it seems that the plaintiff would be in a position to prove the existence of the breach despite the fact that he cannot at present maintain an action thereon. The wrong could still exist, and would be subject to proof; only the timing of the remedy would be affected by the union's dismissal from the case.

The other grounds for summary judgment raised here by the union, but not decided, illustrate the two possibilities. The union's success in escaping liability on grounds that the statute of limitations has run does not alter the plaintiff's ability to prove that the union breached its duty of fair representation. De Arroyo v. Sindicato de Trabajadores Packinghouse, 425 F.2d 281, 284 (1st Cir. 1970). On the other hand, dismissal of the union for plaintiff's failure to plead facts sufficient to state a claim for unfair representation is a conclusive determination that the plaintiff is not in a position to prove unfair representation, and the company cannot thereafter be sued for breach of contract without exhaustion of contract remedies. Compare Dill v. Greyhound Corp., 435 F.2d 231, 237–238 (6th Cir. 1970), with Balowski v. International Union, UAW 372 F.2d 829, 834–835 (6th Cir. 1967). Letting the union out because the employee has failed to exhaust internal union remedies seems to fall somewhere between these extremes.

Few cases have explicitly considered this problem. Brady v. Trans World Airlines, Inc., 401 F.2d 87, 102 (3d Cir. 1968) is occasionally cited for the proposition that "[f]ailure to exhaust internal union remedies could not be urged by the employer as a defense in a suit by the employee for wrongful discharge". Retana v. Apartment, Motel, Hotel & Elevator Operators Union, Local 14, supra, 453 F.2d at 1027 n. 16. However in Brady the rights asserted by the employee were statutory, not contractual, and the employer had no right to rely on the exhaustion of contract remedies. 401 F.2d at 91–96. Furthermore the union and employer in Brady were sued jointly only for Brady's wrongful discharge, and as to that the court determined that failure to exhaust internal remedies was no defense even for the union. 401 F.2d at 102. The court did hold that failure to exhaust precluded suit against the union for unfair representation, 401 F.2d at 104, but because there was no claim against the employer for breach of contract, the entire Vaca formula was inapplicable and the dismissal of the unfair representation count against the union was totally irrelevant to the employer's liability.

On the other hand, at least two courts have granted summary judgment to the employer based on the employee's failure to exhaust internal union remedies. See Davis v. Local 242, Hod-Carriers & Gen. Laborers Union, 72 LC ¶ 14,033 (W.D. Wash.1973); Harrington v. Chrysler Corp., 303 F.Supp. 495 (E.D.Mich.1969). Two others seem to reach a similar result, although the exact basis for decision in each is somewhat uncertain. See Dill v. Wood Shovel & Tool Co., 68 LC ¶ 12,393 (N.D.Ohio 1972); Imbrunnone v. Chrysler Corp., 336 F.Supp. 1223 (E. D.Mich.1971). Still others seem to recognize the possibility of such a disposition while denying it on other grounds. See, e. g., Orphan v. Furnco Constr. Corp., 466 F.2d 795, 801–802 & n. 12 (7th Cir. 1972); Sciaraffa v. Oxford Paper Co., 310 F.Supp. 891, 902 (D.Me. 1970).

The key to resolving this issue is the nature of the remedies which the employee must exhaust. If they were before an administrative agency it would seem logical to conclude that it would be the remedy and not the wrong itself which the exhaustion doctrine would deny. But where the required procedures are those available from the allegedly offending union itself, and pursuit of them "could result in a reversal of the Union's action in refusing to process a grievance and a concomitant timely

filing or reinstating of the grievance according to the provisions of the collective bargaining agreement", Orphan v. Furnco Constr. Co., *supra*, 466 F.2d at 801, the opposite is true. By exhausting his internal remedies the employee may be able to eliminate the very wrong of which he complains, not merely obtain a remedy therefor in another forum. If the union's wrongful refusal to continue the grievance were reversed without prejudice to his rights, the employee would no longer have a cause of action for breach of the duty of fair representation, and consequently would have no right under *Vaca* to sue his employer for breach of contract. This conclusion is consistent with the national labor policy in favor of arbitration. Orphan v. Furnco Constr. Co., *supra*. *See generally* United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S. Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworker of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S. Ct. 1358, 4 L.Ed.2d 1424 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S. Ct. 1347, 4 L.Ed.2d 1409 (1960). It is also consistent with the preference for finality and against interlocutory appeals in judicial review of administrative action generally. *See* K. Davis, Administrative Law Treatise § 20.05 (1958, Supp.1970).

In this case the remedies available to plaintiff through the internal appeal procedure were fully adequate to make him whole, should it have been determined that his grievance was improperly withdrawn. By pursuing them he would have given the union a chance to reverse its earlier actions and effectually prevent any inchoate breach of its duty of fair representation. Not having done so he is in no position to prove that the union committed such a breach and cannot therefore take advantage of *Vaca* to avoid Chrysler's defense of exhaustion. Summary judgment must also be entered dismissing Chrysler from the cause.

An appropriate order may be submitted.