866 F.2d 431
 131 L.R.R.M. (BNA) 2600
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Billy Ray APPERSON, Plaintiff-Appellant,
v.
FLEET CARRIER CORPORATION, Defendant-Appellee.
 No. 87-2060.
 United States Court of Appeals, Sixth Circuit.
 Jan. 23, 1989.
 
 Before WELLFORD and DAVID A. NELSON, Circuit Judges and RICHARD B. McQUADE,* Jr., District Judge.
 WELLFORD, Circuit Judge.
 
 
 1
 This case involves the question of whether an employee represented by a union that has entered a collective bargaining agreement which contains exclusive grievance procedures may state a "hybrid" cause of action under Sec. 301 of the Labor Management Relations Act of 1947 without alleging that the union has breached its duty of fair representation.
 
 
 2
 The district court first held that an employee cannot state such a claim and, further, that it was barred by the statute of limitations. We affirm.
 
 
 3
 Defendant Fleet Carrier Corporation (Fleet) discharged Billy Ray Apperson, the plaintiff, a truck driver, on May 5, 1986. Fleet concluded that Apperson was at fault in a "major chargeable accident" which occurred on February 27, 1986 when Apperson's truck "loaded with four (4) cargo units, ran off [the] roadway causing [his] tractor and trailer to overturn ... severely damaging all four (4) cargo units."
 
 
 4
 Apperson, through his union, Teamsters Local 614, filed three grievances. On May 8, 1986, Apperson appealed his discharge and sought reinstatement of his previous position. On May 17, 1986, Apperson filed a grievance for back pay and benefits and a grievance protesting the issuance of a reprimand for conduct unrelated to the discharge.
 
 
 5
 The collective bargaining agreement between the Teamsters and Fleet contained specific procedures for the resolution of employee grievances. The union is charged with pursuing the employee's grievance. Apperson's grievances were submitted to a grievance panel in accordance with the agreement. Because the local panel did not settle or decide the first discharge grievance, the grievance was sent under contract procedures to the Michigan Automobile Transporters Tri-City Panel for a hearing on May 27, 1986. At that hearing, which Apperson attended, the grievance was discussed, evidence was presented and the grievance was denied. Apperson received notification of the decision by certified mail on June 6, 1986 from Leonard Williams, the Business Representative and Secretary Treasurer for Local 615.
 
 
 6
 The minutes from the Tri-City Panel noted mistakenly that Apperson's accident occurred on March 27, 1986. On June 5, 1986, Williams received a letter from the National Automobile Transporters Labor Division indicating that the date of Apperson's accident should read February 27, and that the minutes of the next meeting would reflect this correction.
 
 
 7
 There is some confusion over the other two grievances. Williams received notification of the denial of the first discharge grievance on June 5, 1986. He sent Apperson three letters, dated June 12, 1986, August 13, 1986, and October 17, 1986, stating that the remaining two grievances would be discussed at the next meeting of the Michigan Automobile Transporter's Local Panel. The grievances, however, apparently were never discussed at any of the three meetings. Then, on January 13, 1987, Williams sent Apperson a letter stating that "In light of the Joint State Arbitration Committee's controlling and contractually final decision in Case No. 5-86-500 to sustain your discharge we are withdrawing your second discharge and reprimand grievances from the Committee's docket." The committee minutes did not indicate that the reprimand grievance was actually withdrawn.
 
 
 8
 On October 30, 1986, Apperson filed this action in the United States District Court for the Eastern District of Michigan. Apperson named only Fleet, and not his union, as a defendant. He claimed that his discharge and reprimand violated the collective bargaining agreement because they were without just cause and were in retaliation for his other lawsuit against Fleet relating to other matters. He also complained that the committee, composed of union and employer representatives "bore animus against Apperson because his lawful and protected activities, including association with other workers, grieving, representing union members, suing in this court to protect brokers' interest in ancillary charges which have not been justified by the company, and declining to be bound by fraudulent grievance decisions in the past." Apperson was referring to his affiliation with Teamsters for a Democratic Union (TDU) and his lawsuit against Fleet.
 
 
 9
 The district court granted Fleet's motion for summary judgment, concluding first that Apperson had not stated a cause of action under Sec. 301 of the LMRA, 27 U.S.C. Sec. 185, because he failed to allege a breach of fair representation claim. In the alternative, if a Sec. 301 claim or any other claim were stated, the court held that the three month statute of limitations borrowed from or directly from the United States Arbitration Act, 9 U.S.C. Sec. 12, barred Apperson's cause of action. We hold that Apperson had failed to state a cause of action, and do not reach the statute of limitation issue.[1]
 
 
 10
 Reading Apperson's complaint liberally, Apperson contends that the results of the grievance procedure should be set aside because the union and management representatives on the arbitration panel were biased against him because he has sued Fleet and participated in the activities of a dissident Teamsters faction. An employee cannot, however, bring a direct Sec. 301 cause of action against an employer to vacate an arbitration award based on wrongful discharge and breach of the collective bargaining agreement which contains an exclusive grievance procedure. See Bagsby v. Lewis Bros., Inc., 820 F.2d 799, 804 (6th Cir.1987) (Ryan, J., concurring). In addition, an employee cannot bring a "hybrid" Sec. 301 action without an accompanying colorable claim that the union has breached its duty of fair representation. Id. at 801 (plurality opinion).
 
 
 11
 The purpose of the LMRA is to allow unions and employers to enter collective bargaining agreements and to bind employees to the agreement's provisions. It is, therefore, common to see "straightforward" Sec. 301 actions by unions, on behalf of employees, against employers, challenging the results of arbitration procedures. See, e.g., United Paperworkers International Union v. Misco, Inc., 108 S.Ct. 364 (1984).
 
 
 12
 The only case which suggests that an employee himself has such a cause of action is Smith v. Evening News Ass'n, 371 U.S. 195 (1962). In Smith the Court allowed an employee to bring a cause of action under Sec. 301 for breach of the collective bargaining agreement. But the Court stated "we need not consider the question of federal law whether [the employee], under this contract, has standing to sue for breach of the no-discrimination clause nor do we deal in the standing of other employees to sue upon other clauses on other contracts." Id. at 201 n. 9. Justice Black dissented in Smith, stating "it seems to me that the Court studiously refrains from saying when, for what kinds of breach, or under what circumstances an individual employee can bring a Sec. 301 action and when he must step aside for the union to prosecute his claim. Nor does the Court decide whether the suit brought in this case is one of the types which an individual can bring. This puzzles me." Id. at 204 (Black, J., dissenting).
 
 
 13
 The collective bargaining agreement at issue in Smith did not contain an arbitration clause. See id. at 196 n. 1. Since the decision in Smith, no court has allowed an employee to bring a Sec. 301 cause of action against an employer for breach of a collective bargaining agreement which contains an arbitration clause of the type here involved. We conclude that no cause of action exists through which an employee can bring an action to set aside a grievance resolution in order to allow a court to address whether an employee's discharge violated a collective bargaining agreement. Courts have consistently favored the resolution of labor disputes through arbitration where a collective bargaining agreement so provides. See United Steel Workers of America v. American Manufacturing Co., 363 U.S. 564 (1960); United Steel Workers v. Warrior & Gulf Navigation Co., 363 U.S. 574 (1960); United Steel Workers v. Enterprise Wheel & Car Corp., 363 U.S. 593 (1960). When a collective bargaining agreement contains exclusive and final procedures for the resolution of employee grievances, the employee's ability to bring an action under Sec. 301 is severely restricted. See, e.g., Hart v. Nat'l Homes Corp., 668 F.2d 791, 793 (5th Cir.1982). Under most circumstances courts will not review facts or legal issues resolved by the dispute resolution mechanism of the collective bargaining agreement. International Union of Electrical, Radio & Machine Workers, AFL-CIO-CLC v. Ingram Mfg. Co., 715 F.2d 886, 891 (5th Cir.1983), cert. denied, 466 U.S. 928 (1984). Apperson must establish a legally cognizable justification for disregarding the resolution of his grievance obtained through the exclusive procedures of the collective bargaining agreement. Morris v. Werner-Continental, Inc., 466 F.2d 1185, 1190 (6th Cir.1972), cert. denied, 411 U.S. 965 (1973).
 
 
 14
 The United States Supreme Court has allowed the employee to intervene and attack an arbitration result in a limited "hybrid" action. The Court has stated that the "rule [of finality] works an unacceptable injustice when the union representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation." DelCostello v. Teamsters, 462 U.S. 151, 164 (1982). Because the LMRA and other federal labor statutes place a high premium on the union's ability to act on the employee's behalf, the union's failure to represent its employee zealously undermines the confidence in the arbitral result. See Dinger v. Anchor Motor Freight, Inc., 501 F.Supp. 64, 67 (S.D.N.Y.1980).
 
 
 15
 The hybrid Sec. 301 action, recognized by the Supreme Court, has two components. The first component is a claim that the employer has breached the collective bargaining contract. The second component is a claim that the union has breached its "duty of fair representation, which is implied under the scheme of the National Labor Relations Act [NLRA]." DelCostello, 462 U.S. at 164-65. As the Court noted, "the two claims are inextricably interdependent." Id. at 164-65 (quoting United Parcel Service v. Mitchell, 451 U.S. 56, 66 (1981) ). The employee can sue either the union or the employer or both--but the cause of action is the same. DelCostello, 462 U.S. at 165.
 
 
 16
 Clearly, Apperson has not pleaded or argued that the Teamsters breached their duty of fair representation as exemplified by the string of "hybrid" Sec. 301 action cases. Apperson's attorney actually states to the district court that "[b]y outward appearances, it seemed that the union stood by [Apperson] at the grievance meeting." Before this court, Apperson's attorney insisted that this is not a fair representation case, but a case that bears a "familial resemblance" to the typical "hybrid" Sec. 301 claim. Apperson does not challenge the union's zeal in pursuing his grievances. In light of the decision on the first discharge grievance, the union's decision to withdraw the second discharge grievance does not seem unreasonable and is certainly not arbitrary or capricious. See, e.g., DelCostello, 462 U.S. 151; Republic Steel Corp. v. Maddox, 379 U.S. 650 (1965); Bagsby, 820 F.2d 799; Spielman v. Anchor Motor Freight, Inc., 551 F.Supp. 817, 820 (S.D.N.Y.1982).
 
 
 17
 Apperson also does not contend that the union breached its duty of fair representation by failing to protect him from an allegedly biased arbitration proceeding. See, e.g., Spielman, 551 F.Supp. at 817 (stating "plaintiff's claim of unfair representation turns on the failure of his union representative to challenge the membership of the arbitration panel as biased ..., because of his activities in the Teamsters for a Democratic Union ..., a national organization of dissident union members"); Harris v. Chemical Leaman Tank Lines, Inc., 437 F.2d 167, 171 (5th Cir.1971). Because the plaintiff has conceded that no breach of duty claim has been stated, we conclude that no breach of duty is alleged.
 
 
 18
 Reading Apperson's claim most generously, Apperson questions the partiality of the union representatives on the arbitration panel. Apperson also states, without alleging any factual basis and using the key language found in Sec. 10 of the USAA, that the grievance procedure was "prejudiced by corruption, fraud, undue means, evident partiality, misconduct, misbehavior, and excess of powers." Apperson here is attempting to create a hybrid Sec. 301/United States Arbitration Act (USAA), 9 U.S.C. Sec. 1 et seq., cause of action by charging that those making decisions in the arbitration process were somehow "biased." The Arbitration Act, however, contains a three month statute of limitations and specifically excludes contracts of employment of individuals involved in the transportation industry. See 9 U.S.C. Secs. 1, 12; Miller Brewing Co. v. Brewery Workers Local Union No. 9, 739 F.2d 1159, 1162 (7th Cir.1984), cert. denied, 469 U.S. 1160 (1985). Sine v. Local No. 992 Internat'l Brotherhood of Teamsters, 644 F.2d 997, 1002 (4th Cir.), cert. denied, 454 U.S. 965 (1981); Paramount Bag Mfg. Co. v. Rubberized Novelty & Plastic Fabric Workers Union, Local 98, 353 F.Supp. 1131, 1139 (E.D.N.Y.1973); see also Sedlarik v. General Motors Corp., 54 F.R.D. 230, 233 (W.D.Mich.1971) (in Sec. 301 cases, because of their nature, "it is incumbent upon the party seeking relief to set out with greater specificity those facts which entitle him to present his case in court").
 
 
 19
 We hold that Apperson has not stated a cause of action under Sec. 301 under these circumstances. Apperson's claim is simply one of bias of the arbitration panel and therefore must be pursued through the exclusive remedies contained in the collective bargaining agreement. If the union then breaches its duty of fair representation and fails to pursue the claim satisfactorily, the employee may properly maintain a hybrid Sec. 301 claim against either his union and/or his employer. Allowing the employee to circumvent the terms of the collective bargaining agreement when the union is not alleged to have breached its duty of fair representation does not further the objectives of the LMRA or the NLRA.
 
 
 20
 For the foregoing reasons this court AFFIRMS the decision of the district court.
 
 
 21
 DAVID A. NELSON, Circuit Judge, dissenting.
 
 
 22
 The type of lawsuit that Justice Stewart called "a hybrid 'Sec. 301 and breach of duty sui[t]' " combines (1) a claim under Sec. 301 of the Labor Management Relations Act (29 U.S.C. Sec. 185) for an employer's breach of a labor agreement and (2) a related claim that a labor union has violated the duty of fair representation implicit in the National Labor Relations Act. United Parcel Service v. Mitchell, 451 U.S. 56, 65 (1981) (Stewart, J. concurring) (quoting Vaca v. Sipes, 386 U.S. 171, 197 n. 18 (1967) ). By definition, an employee may not state a "hybrid" claim of this sort without alleging a breach of his union's duty of fair representation.
 
 
 23
 The fact that the employee in the case at bar has failed to state such a "hybrid" claim, however, does not necessarily make it impossible for the employee to vindicate his individual contract rights in an action under Sec. 301 simpliciter. Speaking through Justice White, and with only Justice Black dissenting, the United States Supreme Court has declared that to exclude from the ambit of Sec. 301 all suits to vindicate individual employee rights arising from a collective bargaining agreement would "stultify" the Congressional policy underlying the Labor Management Relations Act. Smith v. Evening News Association, 371 U.S. 195, 200 (1962). "The same considerations," the Smith court went on to hold, "foreclose ... reading ... Sec. 301 to exclude all suits brought by employees instead of unions. * * * Neither the language and structure of Sec. 301 nor its legislative history requires or persuasively supports this restrictive interpretation, which would frustrate rather than serve the congressional policy expressed in that section." Id. Smith holds that individual employees may sue their employers under Sec. 301, without asserting any breach of the union's duty of fair representation, and in the absence of intervening Congressional action or a repudiation of Smith by the Supreme Court itself, I take it that the holding remains binding on us whether or not the Court periodically finds occasion to tell us that the case is still good law. I know of no sunset provision for decisions of the United States Supreme Court.
 
 
 24
 Where a collective bargaining contract establishes mandatory grievance resolution procedures, to be sure, an individual employee normally cannot recover a judgment against his employer in respect of a grievance on which the employee has not prevailed under the contract mechanism unless there has been a breach of the union's duty to represent the employee fairly--for where the union has done its job, normally there will have been no breach of contract by the employer. The employer does not promise that mistakes will never be made, by it or by the grievance panel; what the employer promises, rather, is that the grievance machinery will be allowed to work.
 
 
 25
 It does not follow from this that the employer is immune from a breach of contract action under Sec. 301 where, notwithstanding faithful representation by his union, the employee can show that there had been fraud, or corruption, or some other fundamental defect in the grievance process. I agree with the Fifth and Ninth Circuits that an individual employee cannot attack a final award rendered under a collective bargaining agreement "except on the grounds of fraud, deceit, or breach of the duty of fair representation or unless the grievance procedure was a 'sham, substantively inadequate or substantially unavailable.' " Harris v. Chemical Leaman Tank Lines, Inc., 437 F.2d 167, 171 (5th Cir.1971) (referring to Rothlein v. Armour & Co., 391 F.2d 574, 579 (3d Cir.1968); Andrus v. Convoy Company, 480 F.2d 604, 606 (9th Cir.), cert. denied, 414 U.S. 989 (1973). (Emphasis supplied.) See also Humphrey v. Moore, 375 U.S. 335 (1964). And just as an employee may sue under Sec. 301 where there has been a breach of duty of fair representation but no fraud or corruption, I believe that an employee may sue under Sec. 301 where there has been fraud or corruption but no breach of the duty of fair representation.
 
 
 26
 We cannot tell, from the record before us, whether the decision rendered by the grievance panel in Mr. Apperson's case was in fact tainted by fraud or corruption. Mr. Apperson alleges in his complaint that "[t]he decision was prejudiced by corruption, fraud, undue means, evident partiality, misconduct, misbehavior, and excess of powers...." These allegations are denied in the employer's answer, but in moving for summary judgment the employer pressed only its statute of limitations defense and made no attempt to show the non-existence of any genuine issue of material fact regarding the alleged corruption, fraud, and so forth.
 
 
 27
 The district court found it unnecessary to decide the statute of limitations question, except insofar as the court held that if the Federal Arbitration Act applies here, the plaintiff's claim is barred by the three-month limitation period prescribed in that Act. Resting its decision primarily on a theory not urged by the employer, the district court held that "[s]ince plaintiff has not alleged that the union failed to fulfill their duty of fair representation, he has not stated a cause of action under Sec. 301 in his complaint."
 
 
 28
 For the reasons sketched out above, I would not have disposed of this case on that ground. I must therefore dissent, respectfully, from my colleagues' decision to accept the district court's reasoning and to affirm the judgment on the basis of that reasoning. Whether the judgment could properly be affirmed on statute of limitations grounds is a question with which I shall not attempt to wrestle, my colleagues not having reached the issue.
 
 
 
 *
 THE HONORABLE RICHARD B. McQUADE, JR., United States District Court for the Northern District of Ohio, sitting by designation
 
 
 [1]
 See, e.g., United Mine Workers of America, District 4 v. Cyprus Emerald Resources Corp., 681 F.Supp. 271 (W.D.Pa.1988) (discussing whether hybrid and pure employee Sec. 301 actions require different limitations periods)